Myrtle WALTERS, Appellant,

v.

Mack G. WALTERS, Appellee.

Court of Appeals of Kentucky.

Oct. 20, 1967.

Frank E. Haddad, Jr., Louisville, Marion Rider, Frankfort, for appellant.

Earl S. Wilson, E. F. Schaeffer, Jr., Lexington, for appellee.

EDWARD P. HILL, Judge.

The judgment appealed from granted the wife a divorce, $37,500 lump sum alimony, $200 monthly alimony, a Buick automobile, and some furniture. She demands a reversal on the theory (1) that the chancellor undervalued an item of appellee's property in arriving at his net worth; (2) that she is entitled to greater alimony, all in a lump sum; (3) that she is entitled to a lump sum in alimony equal to or in excess of one-third of her husband's net estate; and (4) that $1000 paid by her to two appraisers, who made appraisement and testified for her, should be taxed as costs.

We approach a solution to the questions presented conscious of CR 52.01 which limits the reviewability of findings of fact by the chancellor. Such findings of fact will not be disturbed unless found to be clearly erroneous.

The parties were married in 1945. It was a second marriage for appellant. Appellant had one child, Patricia Ann Rule, age eight, at the time of her marriage to appellee. This child was educated by the parties herein.

Early in 1965, according to appellant, the husband lost his affection for her and wanted a divorce. At the instance of appellee, the appellant filed suit for divorce on April 14, 1965.

The chancellor found appellee's net estate to be worth $178,200.

Included in the gross valuation is an item of $80,000 found and used by the chancellor as the worth of appellee's one-third interest in a tobacco warehouse partnership known as Old Globe Tobacco Warehouse. This is the only item in the list making up appellee's gross estate that is seriously questioned by appellant in this court. She contends appellee's one-third interest in the partnership far exceeds $80,000, the amount found by the chancellor.

The evidence shows the fair market value of the real estate owned by the partnership

was $400,000 and that its liabilities were $160,000. The chancellor apparently deducted the liabilities from the value of the real estate and took one-third of the remainder as the value of appellee's interest in the partnership. Appellant complains that no value was placed on "going concern" or "good will."

The partnership earned the following amounts during the years listed:

| 1964 | $69,256.08 |
| 1965 | 47,500.47 |
| 1966 | 78,250.89 |

Appellee drew cash in the following amounts for the years indicated below:

| 1964 | $21,724.47 |
| 1965 | 18,676.87 |
| 1966 | 22,525.54 |

The balance sheet of the partnership shows the book value of the interest of appellee at $75,208.87 for 1964 and $77,715.24 for 1966.

Appellant uses two systems to determine the value of appellee's one-third interest in the partnership: (1) The book value plus four times the "excess income" gives a value of $135,888.68; (2) Capitalization of "net income at eight percent" gives a value of $136,544.92.

The partnership contract, dated October 14, 1963, after defining the respective duties of the three partners, provides that in case of "death" or "incapacitation" of either partner, the remaining partners shall have an option to purchase the interest of the departed or incapacitated partner on the basis of the valuation in effect at the time of death or disability.

■ Without going into further detail on the value of appellee's interest in the tobacco warehouse partnership, it may be said that the chancellor's value of $80,000 was low and could have been higher. However, there are many elements to be considered in fixing the values of one's estate for the purpose of determining alimony. One element is the husband's ability to pay. Under this factor the court may consider the means necessary to raise the amount of alimony allowed, such as, quick sales and tax obligations incurred in connection with liquidating one's estate. In this case, according to appellee's brief, we have a good example of a tax obligation resulting from the sale of appellee's farm. The chancellor fixed the value of the farm at $225,000. We are told that after the judgment the farm sold for $217,000, out of which arose a tax liability of $28,000 leaving appellee with a net of $189,000, or $36,000 less than the chancellor valued the farm.

It is concluded the value placed by the chancellor on appellee's interest in the partnership is not clearly erroneous.

■ Turning to appellant's argument that she is entitled to more alimony, all in a lump sum, it may be stated as a general rule that "alimony should be allowed to the wife in a lump sum if the character of the husband's estate will permit it to be done." Cf. Yung v. Yung, 294 Ky. 369, 171 S.W.2d 1017, 1019 (1943); and Ralston v. Ralston, Ky., 396 S.W.2d 775 (1965).

In Ralston at page 777 this court said:

"Of course, numerous factors are involved, including the value of the husband's estate, his income, age, health, capacity and ability to labor, and the extent to which the wife has been instrumental in helping to accumulate his estate. The wife's age, health, station in life, the time she has devoted to the marriage, having and caring for a child or children, and other circumstances must also be considered."

See also Hicks v. Hicks, Ky., 290 S.W. 2d 483.

■ The facts in the case at bar indicate there were no children born to the marriage; that appellee inherited substantially all his estate; that during the twenty years of their marriage their liabilities increased; that appellee spent considerable money toward the support of appellant's

child by her former marriage; that appellant strove to be a faithful companion to appellee, always mindful of his success and welfare.

The net value of appellee's estate was fixed at $178,200, one-third of which amounts to $59,400. The lump sum of $37,500 added to the value of $200 monthly allowance benefits to appellant comes to a sum nearing amounts we have customarily approved. Appellant is about forty-eight years of age with life expectancy of about twenty-five years.

Regarding the ability of appellee to pay a lump sum amount, it should be kept in mind that after the sale of appellee's home and farm, he realized only about $44,000 after payment of mortgage debts. This amount is sufficient to pay the lump sum provided by the judgment but leaves appellee more than $30,000 in debt. It is apparent that the allowance of a greater amount of lump sum alimony would have forced appellee to liquidate his interest in the tobacco warehouse and thereby cut off substantially all of his income.

The entire circumstances considered, we cannot say the judgment is clearly erroneous in not awarding a greater amount of alimony in a lump sum.

There remains the question of costs. Appellant engaged two qualified appraisers to value the property of appellee. They both testified for appellant and were paid $500 each by her. The chancellor allowed only $150 for each appraiser, or a total of $300. Under KRS 453.120 in an action for divorce, the husband is liable for the costs. The large amount paid the appraisers is an extraordinary item of costs. We think, under the circumstances, the chancellor was vested with some discretion in allowing and allocating a portion of this item against appellee. We cannot say his discretion was abused or that his conclusion was clearly erroneous.

The judgment is affirmed.

All concur.