Wanda B. SCOTT, Appellant,

v.

J. Edwin SCOTT, Appellee.

Court of Appeals of Kentucky.

Nov. 1, 1968.

Weldon Shouse, Shouse, Barker & King, Lexington, for appellant.

Rosenbaum & Sullivan, Lexington, for appellee.

OSBORNE, Judge.

This is a divorce action. The parties are, as usual, fighting over the size of the award, though there are some other issues. The trial court gave the wife small periodic

alimony and she is seeking larger periodic payments and/or a lump sum. The husband is contending that she should receive no alimony. The trial court granted the husband a divorce and dismissed the wife's complaint.

The parties were married in 1948 and lived together for eighteen years before this action was instituted. In the beginning the husband was a student. He has since finished dental school and gone into practice, first in London for two years, and since then in Lexington for many years. He now has a well-established practice returning him a substantial income.

The appellant wife worked for less than a year when they were first married, quitting when she became pregnant. She has reared their two daughters, now in their late teens and has cared for the house and performed the regular housewifely functions without help. As the daughters grew up she found more and more time on her hands and had taken up golf, bowling and club work.

Throughout the early hard years when her husband was in school and starting practice her parents helped out with clothes for her and the children and apparently with additional cash as well. This apparently continued even after the husband grew more prosperous. In addition, her parents advanced $1800 toward the purchase of their first home which was not reinvested in their present home.

The real problems in this case seem to have developed since her parents died several years ago although the roots go back farther. The wife with more free time on her hands apparently decided that she did not love her husband and treated him accordingly. She became upset with his spending habits and refused to go anywhere with him, because she contended that he was too tight and wouldn't let her spend as freely as she wished.

Finally, she consulted a psychiatrist and after lengthy joint and individual counsel-ing, she decided to file for a divorce. The psychiatrist testified at length. The gist of his testimony was that these two people just didn't get along and that the wife was not interested in the husband anymore and wanted out. The husband did not want a divorce and filed only after the wife had filed. The wife contended that certain accusations made by the husband to her friends constituted unfounded charges of lewd and lascivious conduct and that she was entitled to a divorce on the basis of these unfounded accusations. These accusations were denied by the husband and were not made in the pleadings or in the evidence. Since the judge made no specific finding in dismissing her complaint on the claim of unfounded charges of lewd and lascivious conduct and no request for such a finding was made by appellant, her objection on this appeal comes too late.

These parties have not accumulated much in the way of assets from their own endeavors, though both have inherited substantial amounts. The only things acquired during the marriage seem to be their house bought through a long-term mortgage and certain improvements thereon—the total value of which is $20,000, a car, part of which was paid for with money from the wife's inheritance, a hi-fi and a television set. The remainder of their furniture was that given them by the wife's mother or inherited by one or the other.

In addition to this small amount acquired through their own efforts, they have each inherited substantial sums from their parents. The wife has inherited property now worth around $85,000 and the husband's property is now worth around $40,000.

In 1967, the husband had an income from his practice of around $16,000 net and from his investments of around $4,000. The wife had an income of $4,750 from her investments in 1967. However, part of her investments were in a mutual fund which had not yet begun to pay dividends, and she will probably have some more income

from this. The wife has not worked for many years and though she has several years of college apparently is not trained for any particular profession or trade.

The chancellor awarded the wife a pro rata refund of $1120 on the contribution she made to the purchase of the Cadillac which she apparently drove during the marriage but which the husband took when he left; she was allowed $100 per month alimony and the use of the house for three years. She was given custody of the parties' two daughters and support of $125 a month per child until 18. However, one child has already reached 18 and the other one soon will or already has. She alleges in this respect that she will have to support the daughters until they finish college. However, there is a trust established by the husband's parents which will provide $8,000 or $9,000 per child for college and the husband testified that he would pay for the rest of their college education, and in fact, had paid for a trip to Europe for the older girl since the separation.

The wife contends that she is entitled to a lump sum of at least one-third of the husband's estate and/or larger periodic payments. There are several factors involved here. First, does the wife have sufficient estate of her own? Secondly, is the wife so much at fault that she is not entitled to alimony? Thirdly, should the husband's inheritance be counted in computing alimony? Finally, has the wife contributed enough that she should be entitled to a lump sum?

■ All of these questions must be answered in the basic frame of reference that these matters are primarily within the chancellor's discretion and we are not to interfere unless there is a clear abuse of that discretion.

■ The husband contends that the wife's estate is sufficient within the meaning of the statute and she is therefore not entitled to receive alimony. "This court has construed 'sufficient estate of her own' as used in KRS 403.060, to mean that the wife's estate must be of such character and amount as will yield income or profits sufficient for her comfortable maintenance in a style suitable to her social standing, without her being required to consume the principal." McLaughlin v. McLaughlin, Ky., 405 S.W.2d 22. In this case the wife has assets worth around $85,000 which are returning an income of around $400 a month. This couple has been living at a very high standard of living. The husband testified that they had spent almost all of his income on living expenses, and his income has been in the $15,000 bracket for several years and now is around $20,-000. Therefore, the chancellor did not err in deciding that the wife did not have sufficient estate of her own.

■■ The husband next contends that the wife is so much at fault that she is entitled to no alimony at all, citing Donoho v. Donoho, Ky., 357 S.W.2d 665. The conduct of the wife in that case was much worse than in this and she apparently not only was totally at fault but during most of the marriage had refused to assume and perform her duties as a housewife and had even refused to care for the parties two infant children. This case does not fall within that holding. The wife then contends that she is entitled to much more, citing many cases that a wife primarily at fault is not to be denied alimony on that basis if the husband is also at fault. Combs v. Combs, Ky., 350 S.W.2d 502; Heustis v. Heustis, Ky., 346 S.W.2d 778; Coleman v. Coleman, Ky., 269 S.W.2d 730. This is undoubtedly the law, however, this wife was given alimony. The primary basis in allowing periodic alimony is the wife's needs. This wife has substantial income, is able to work, even if not at a high salary, and with the income from her inheritance, the alimony allowed and any salary she might earn will be able to live quite comfortably, if not as luxuriously as before. However, in this respect it should be pointed out that the wife sought this divorce, and was primarily at fault in the breakup

of the marriage. She should not expect to benefit economically from such a sequence of events. We certainly cannot say the chancellor erred in not giving her more alimony.

■ Finally, the wife claims that she is entitled to a lump sum equal to one-third of the husband's estate including his inheritance. A lump sum award has several facets. First, it is to replace periodic alimony and to prevent future legal battles between the parties. For this reason, it has often been said that lump sum alimony is preferred. Ralston v. Ralston, Ky., 396 S.W.2d 775; Porter v. Porter, Ky., 394 S.W.2d 456; Heustis v. Heustis, supra, and many other cases too numerous to cite. However, it is not the only alternative Hall v. Hall, Ky., 380 S.W.2d 231. Secondly, it is to repay the wife for her contributions in accumulating the marital estate, even if this only consists of staying at home and raising the children and minor financial endeavors. This is the factual basis of Heustis v. Heustis, supra. The idea seems to be that if the parties have started out with nothing and through joint efforts and joint thrift saved a great deal, the wife should also share in this. Though lump sum can be based on estate other than that acquired during the marriage, that would not be upon the same theory, but would rather be upon a need theory, similar to that of periodic. Here the parties have accumulated very little through their efforts and thrift. The wife, especially, has never sought any outside employment and has not been particularly thrifty and she has an estate of her own much larger than that of the husband's. Under these circumstances she is not necessarily entitled to any fixed portion of the husband's estate and certainly not to a substantial lump sum and periodic payments, too.

We cannot say that the chancellor abused his discretion at all in this case. He could well have repaid her the $1800 advanced in the first house, however, since it is not shown that this was not used in living expenses, and in view of the other award this result is certainly not reversible. The wife was mostly at fault in this case, and she can live comfortably off what she has and what has been provided for her. Neither can we say that the chancellor abused his discretion in awarding her $100 per month and the use of the house for three years. The children are with her and even though they will be going to college soon they will be coming home for visits. She will be using the house for that purpose. Furthermore, the use of the house will assist her in an interim period while she seeks suitable employment. Although this wife is primarily at fault she has raised the parties' two children well and has kept house for him for many years. The chancellor did not err in granting her alimony.

■ Finally, the wife complains because the court did not make the husband pay the entire attorney's fee. The chancellor found that the wife had made an agreement with her attorney to pay him a $400 retainer with the provision that he would get in addition any fee levied against the husband. The court took this into consideration, fixed a reasonable fee at $1,000 and then deducted the $400 the wife had paid. This was not an abuse of discretion in light of the prior contract between the wife and the attorney. The husband's contention that she should pay the entire fee because of her separate estate is answered by the discussion on what is an adequate estate above and by the McLaughlin case there cited.

■ She also contends that the chancellor should have taxed the fee of the psychiatrist for testifying against the husband. This court usually follows the discretion of the chancellor in such matters and we see no reason to deviate from that practice here. Walters v. Walters, Ky., 419 S.W.2d 750 and Justice v. Justice, Ky., 421 S.W.2d 868.

The judgment is affirmed.

All concur.